**LAW OFFICES OF ANGEL J. HORACEK, PC**
Angel J. Horacek (SBN 245680)
angel@horaceklaw.com
Iryll Robbins-Umel (SBN 249562)
iryll@horaceklaw.com
5701 West Slauson Avenue, Suite 210
Culver City, CA 90230
310-774-0323
310-774-3945 fax

Attorneys for Plaintiff Amelia Scannell

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA SCANNELL, an individual,<br><br>       Plaintiff,<br><br>    v.<br><br>LOUIS DEJOY, Postmaster General, United States Post Office,<br><br>       Defendant. | Case No.:<br><br>**COMPLAINT FOR**<br><br>1.  Harassment<br>    [42 U.S.C. §2000(e)]<br>2.  Discrimination<br>    [42 U.S.C. §2000(e)]<br>3.  Retaliation<br>    [42 U.S.C. §2000(e)-5(f)]<br>4.  Discrimination<br>    [29 U.S.C. §791]<br>5.  Failure to Reasonably Accommodate<br>    [29 U.S.C. §791]<br>6.  Harassment<br>    [29 U.S.C. §791]<br>7.  Retaliation<br>    [29 U.S.C. §791]<br><br>**DEMAND FOR JURY TRIAL** |

Now comes Plaintiff Amelia Scannell and alleges:

**PARTIES**

1.      At all times herein mentioned Plaintiff Amelia Scannell, an individual, was a resident of the County of Los Angeles, and a citizen of the State of California.

2.      Defendant, Louis DeJoy, is named in his capacity as the Postmaster General and Chief Executive Officer of the U.S. Postal Service (hereinafter "Defendant" or "Postal Service" or "USPS"), and is sued herein in such official capacity.

**JURISDICTION AND VENUE**

3.      Jurisdiction of this Court is proper pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 et. seq. and the Rehabilitation Act of 1973, 29 U.S.C. §791.

4.      Venue is proper in U.S. District Court, Central District, Western Division, under 28 U.S.C. §1391(e) and 42 U.S.C. §2000e-5(f)(3) regarding Defendant, since (1) a substantial part of the events on which these claims are based occurred in the District and Western Division thereof, and (2) some or all of the Defendants responsible for the wrongful acts reside in the district, and Plaintiff is a resident of the District and the Division hereof.

5.      Plaintiff has performed all conditions precedent to exercise of the jurisdiction of this Court by exhausting the administrative remedies available to her and received the Final Agency Decision, which includes the notice of the right to file a civil action in federal district court.

**STATEMENT OF FACTS**

6.      In February 2020, Plaintiff was hired as a City Carrier Assistant (hereinafter "CCA") for Defendant USPS in Chicago, Illinois. As a CCA, Plaintiff prepared the mail for delivery and delivered mail.

7.      Plaintiff moved from Illinois to Los Angeles, California and transferred her workplace with USPS as well. She started working as a CCA at

COMPLAINT

the Culver City Post Office (hereinafter "Culver City") in January 2021.

8.    During the relevant time period, Plaintiff presented as male and used a different name in the workplace. In private, she was undergoing a gender transition process. Additionally, Plaintiff had been diagnosed with the mental disability of depression.

9.    In March 2021, Plaintiff was hospitalized for at least three days due to depression. Postmaster Strong was made aware that Plaintiff was in the hospital for a mental disability in order for Plaintiff to be excused from work.

10.    Culver City Postmaster Roderick Strong was impressed with Plaintiff's performance. In May 2021, Postmaster Strong offered Plaintiff the opportunity to work as the "204B, Acting Closing Supervisor," which was a temporary detail assignment. Plaintiff was interested in the assignment. However, the incumbent of the position remained in the role longer than expected, so Plaintiff was not reassigned into the detail at that time.

11.    Plaintiff continued working at the Culver City Post Office without issue. In June 2022, Plaintiff was finally assigned into the 204B, Acting Closing Supervisor detail. Her duties included supervising carriers, ensuring carriers returned to the post office safely, preparing the office for the following day, taking undelivered mail to another facility, and locking up the post office. Plaintiff was paid one additional dollar per hour in this role. As the 204B, Acting Closing Supervisor, Plaintiff supervised other employees that included CCAs, carrier technicians, receiving clerks, and retail clerks.

12.    In July or August 2022, Plaintiff's official position title was promoted from CCA to Carrier Technician, which meant higher pay, better benefits, and more. Plaintiff continued to work in the 204B, Acting Closing Supervisor detail after this conversion.

13.    Plaintiff was reluctant to present herself as a woman at work due to the anti-LGBTQ+ environment created by other employees. For example, in June

COMPLAINT

2022, Postmaster Strong told Plaintiff, "I'm not a f****t but you smell amazing." The work environment in general was infused with attitudes, biases, and prejudices based on sexual orientation and gender identity, race, mental and physical disabilities, and more. Coworkers would often make ignorant remarks about people who were not like them. Plaintiff would constantly hear derogatory remarks about gay people, gay stereotypes, and more.

14.    On or around August 10, 2022, coworker Edwin Pineda observed an online profile picture of Plaintiff appearing as a woman on an instant messaging application. Pineda showed and/or texted the picture to a few coworkers. When Plaintiff learned of this, she became panicked, shocked, and distraught. Plaintiff had spent her whole life keeping her true gender a secret. In an effort to prevent the information from spreading to other employees at Culver City, she texted Pineda and his friends asking to keep things private. But news about Plaintiff's gender transition spread quickly throughout the post office.

15.    In the following days, weeks, and months, different employees constantly approached Plaintiff while she was working to comment and ask questions about Plaintiff's genitalia, sexual acts, and more. They made several statements to Plaintiff about her transition or their perceptions of her sexual orientation. Some statements were outright and explicitly derogatory. Employees would also directly tell Plaintiff that they had heard that she was transgender. Employees would share information about their own sexual activities and fantasies with Plaintiff even though these employees had never spoken to Plaintiff about these topics before and Plaintiff had never asked for this information or welcomed these types of comments.

16.    Plaintiff would tell employees that she was not interested in speaking to them about her transition. Plaintiff's wishes were not respected, however, and employees would continue to subject her to comments and questions about her transition on a daily basis. Some employees became uncooperative and stopped

4

COMPLAINT

complying with Plaintiff's work instructions, even though they were compliant prior to Plaintiff's outing.

17.     One coworker physically threatened Plaintiff. Coworker Jamie Paredes got angry at Plaintiff and said, "Never touch my fucking time card again. See what happens. I'll fuck you up, j***," which was a homophobic slur in Spanish. Another coworker, Christine Baca, said that she planned to spread the photograph of Plaintiff presenting as a woman everywhere in order to "teach [Plaintiff] a lesson" to retaliate against one of Plaintiff's supervisory instruction. Baca also referred to Plaintiff using a feminine version of Plaintiff's deadname with other coworkers. It was clear that Baca used that name to harass Plaintiff because of her gender transition.

18.     In or around August 2022, Plaintiff initiated the EEO complaint process in EEO Case No. 4E-900-0250-22. The complaint summarized her coworkers' behavior following the outing of Plaintiff and described Postmaster Strong's use of a homophobic slur.

19.     The news of Plaintiff's transition eventually reached Culver City management. Supervisor Barbara Elzie would openly discuss Plaintiff's transition with other employees. On one occasion, Supervisor Elzie stated that Plaintiff "likes to dress up as a girl."

20.     Before the rumors about Plaintiff spread, Postmaster Strong would constantly praise Plaintiff for her work and stated the intention to permanently assign Plaintiff to the Finance Supervisor position. In fact, Plaintiff had already been performing some Finance Supervisor duties assigned by Postmaster Strong by that point. But after the news came out, Postmaster Strong also started to act distant and cold toward Plaintiff.

21.     On or around November 17, 2022, without warning, he suddenly removed Plaintiff from her 204B Acting Supervisor detail. Plaintiff was shocked. Plaintiff was expecting to remain in the position for substantially longer than the

5
COMPLAINT

6 months she was there since her predecessor had inhabited the temporary detail for 1½ years and, according to Postmaster Strong, was not as effective or productive as Plaintiff. When Plaintiff's detail ended on November 17, 2022, she was replaced by Jennifer Flowers, an employee who was not openly gay or transgender.

22.     In November 2022, EEO Counselor Marisha Satchell interviewed Postmaster Strong about Plaintiff's allegations of the hostile work environment in Culver City due to her transgender status and the other allegations in her complaint.

23.     To escape harassment and discrimination resulting from her transition, Plaintiff sought opportunities with the Postal Service outside of Culver City Post Office. In November 2022, after Plaintiff was removed from the Culver City 204B detail, second-line supervisor Iris Ledesma, Manager Post Office Operations ("MPOO Ledesma"), helped Plaintiff transfer into an Acting Supervisor detail at the Venice Post Office.

24.     On December 1, 2022, the parties participated in a mediation that resulted in settlement. The settlement agreement stated, "Management (Roderick Strong) will not impede on the Counselee's… upward mobility; however, management cannot guarantee the Counselee will be promoted or given other supervisory opportunities outside of the Culver City Post Office."

25.     Plaintiff felt relieved that she was no longer working in Culver City and that she could return her focus to building a career at the Postal Service. Management at Venice praised her work and later recommended Plaintiff for an Analyst detail helping MPOO Ledesma supervise postmasters in their district.

26.     In January 2023, Plaintiff started working in the Analyst detail for MPOO Ledesma. As Analyst, Plaintiff received extensive training and mentorship from MPOO Ledesma. They traveled together to different post offices stations to work. Plaintiff also performed management responsibilities including

COMPLAINT

Human Resources-related tasks such as reviewing and updating employee time and attendance rosters, performing various tasks on electronic programs for management, and coordinating meetings for postmasters in the region.

27.    Plaintiff's detail was originally for three months but it was extended. MPOO Ledesma praised Plaintiff for her performance and MPOO Ledesma informed Plaintiff of her plans to convert Plaintiff's detail into a permanent position.

28.    On or around May 7, 2023, Postmaster Strong requested that MPOO Ledesma return Plaintiff to Culver City. MPOO Ledesma notified Plaintiff that the request was rejected. Plaintiff was terrified. Plaintiff did not want to return to the hostile work environment in Culver City. In addition, the explicit terms of the settlement agreement in Plaintiff's EEO case prohibited Postmaster Strong from impeding with Plaintiff's upward mobility at the Postal Service. Returning Plaintiff to Culver City would be a violation of the settlement agreement, as Plaintiff would at the very least no longer be working in the Analyst detail.

29.    On or around May 15, 2023, Plaintiff informed MPOO Ledesma of her mental disability and requested one hour of leave per week to attend therapy sessions.

30.    On May 17, 2023, Plaintiff was ordered to return to Culver City to carry mail. MPOO Ledesma said that all 204Bs were given the same instruction for other post offices due to mail delays. However, this statement was untrue. No other 204Bs were removed from their details to carry mail.

31.    Plaintiff was overwhelmed with a great fear after being instructed to report to Culver City again. The Culver City Post Office was dangerous and hostile for her. To Plaintiff's knowledge, Postmaster Strong had made no effort to address and/or remedy the harassment to which she was subjected. Even though Plaintiff was never "out" at work, Culver City employees continued to harass Plaintiff even after she had transferred out of Culver City in November 2022.

Specifically, during Plaintiff's Analyst detail, Plaintiff accompanied MPOO Ledesma on a work visit to Culver City. During that visit, Culver City employee Christine Baca addressed Plaintiff as a "lady" in front of other employees. Also, Culver City Supervisor Elzie approached Plaintiff to talk to her privately about her transition. Baca and Supervisor Elzie's comments led Plaintiff to believe that Postmaster Strong had failed to counsel or discipline any of Plaintiff's harassers. Plaintiff expected that a return to Culver City meant a return to an environment where her harassers remained unchecked and emboldened to continue the harassment.

32.    Due to her feelings dealing with this harassment, Plaintiff told MPOO Ledesma that she wanted to resign but did not initiate the formal process of resigning.

33.    The instruction to return to Culver City had a tremendous impact on Plaintiff's mental and physical health. Plaintiff was previously diagnosed with multiple disabilities, including depression, but could still work at a high level. However, the thought of returning to her harassers at Culver City rendered her unable to get out of bed. Normal tasks like leaving the house felt impossible.

34.    As a result of Plaintiff's disability, she was unable to report to Culver City for work. Plaintiff's absences were initially charged as sick leave and Leave Without Pay ("LWOP"). Her therapist placed Plaintiff off of work from May 28, 2023 to July 28, 2023. On or around June 5, 2023, Plaintiff requested a reasonable accommodation under the Rehabilitation Act in the form of leave by providing MPOO Ledesma with a letter from Plaintiff's therapist stating that Plaintiff needed time off of work.

35.    Plaintiff was eligible for FMLA. However, MPOO Ledesma did not respond to Plaintiff's request for reasonable accommodation. Instead, Plaintiff was charged as being on unscheduled leave, including the charge of Absent Without Leave ("AWOL"). Plaintiff received a letter instructing her to report to

8

Culver City for an investigative interview on June 8, 2023. Plaintiff could not attend the investigative interview due to her disability.

36.     On or around July 10, 2023, Defendant issued a Notice of Removal to Plaintiff. The grounds for her dismissal were 208 hours or 26 days of unscheduled absences, 184 hours of which were designated as AWOL, for the period covering May 27, 2023 to June 30, 2023.

37.     The AWOL charges and Notice of Removal demonstrate Defendant's failure to engage in an interactive process with Plaintiff to identify a reasonable accommodation for her disabilities.

38.     The timing and nature of the Notice of Removal were surprising and distressing for Plaintiff for several reasons. First, Plaintiff had already submitted her therapist's letter to Defendant. Second, during Plaintiff's tenure as MPOO Ledesma's Analyst, Plaintiff witnessed postmasters throughout the district not issuing removal notices to several employees despite extended unscheduled absences that were the same or greater in length compared to Plaintiff. Plaintiff learned of these practices through her participation in weekly virtual meetings where postmasters, management, and Human Resources officials would discuss the "Zero Hour" and "LWOP" lists, which tracked employees with extensive absences. A major focus of the weekly meetings would be the requirement that all postmasters and other management officials exhaust all communication channels with employees with attendance problems before issuing any Notice of Removal. This included frequent phone calls, text messages, and other forms of contact to determine the employee's situation and explore possible accommodations.

39.     In her own case, however, Plaintiff noted a stark contrast. Defendant did not call Plaintiff's phone nor send her text messages regarding her absences before the Notice of Removal was issued. She was certain that management had all of Plaintiff's contact information, including her personal cell phone. In fact, both Postmaster Strong and MPOO Ledesma would contact Plaintiff via her

COMPLAINT

personal cell phone for work-related matters before Plaintiff received the order to return to Culver City. Despite these previous communications, no attempt was made to communicate with her regarding her absences in May and June 2023.

40.    Defendant, and specifically management of Culver City and other post offices in the Los Angeles District, have allowed other employees that were not transgender and/or not perceived as gay to have unscheduled absences for longer periods of time compared to Plaintiff's absence and/or were allowed to remain employed despite their extensive absences. The employees that did receive removal notices were disciplined on multiple occasions for their attendance problems before the removal notices were issued. Plaintiff, on the other hand, had no prior discipline on record.

a) Coworker Pineda is one specific example of a comparator. Pineda was a fellow full-time carrier at Culver City who had a history of problematic attendance. On or around September 30, 2021, Defendant issued a Notice of Removal to Pineda for 27 days of unscheduled absences. However, he already received previous discipline of two Letters of Warning and a 7-day No Time Off Suspension -- all for failure to maintain regular attendance. Pineda is cisgender, not openly gay, and had no history of EEO activity.

b) Another comparator was Danielle Flenoy, who was a full-time carrier at Culver City who had 27 days of unscheduled absences from July 6 to August 12, 2021. Supervisor Angelarosa Blanco and Postmaster Strong sent two letters dated July 30, 2021 and August 12, 2021 to Flenoy providing notice of AWOL charges for the absences. Flenoy failed to report to work for another extended period of 32 days starting on November 19, 2022. On January 24, 2023, Angelarosa Blanco and Postmaster Strong issued a Notice of Removal for the 32-day absence. The Notice of Removal cited prior discipline of a 14-day No Time Off

Suspension dated March 15, 2022 and stated that Flenoy failed to attend the investigative interview scheduled before the Notice of Removal. Flenoy is cisgender, not openly gay, and her last EEO activity was nearly 12 years prior to the Notice of Removal date.

c) Beezer Jurado-Ecker was a full-time carrier at Culver City who had an unscheduled absence for 35 days. Despite this extended unscheduled absence, Angela Blanco issued a letter dated January 8, 2024 notifying Jurado-Ecker that their absences were considered as AWOL. Jurado-Ecker was not issued a Notice of Removal for their unscheduled absences. As of the date of the letter, Jurado-Ecker had no history of filing any formal EEO complaint.

d) Brian Stevens was a full-time carrier at Culver City Post Office who had 39 days of unscheduled absences. On January 3, 2021, Angela Blanco and Postmaster Strong issued a Notice of Removal citing prior discipline consisting of two Letters of Warning, a 7-Day No Time Off Suspension, and a 14-Day No Time Off Suspension, nearly all of which was for failure to maintain regular attendance. Stevens is cisgender, not openly gay, and had never filed a formal EEO complaint.

41.     Plaintiff filed a grievance over the Notice of Removal stating that management violated various Postal Service regulations and rules by issuing the Notice. The Step B Decision, issued on December 12, 2023, noted that management had failed to provide evidence to justify the removal. The decision stated that management did not establish just cause for Plaintiff's dismissal, as they could not substantiate the claims against her.

42.     On July 8, 2022, Plaintiff emailed MPOO Ledesma to disclose that she was transgender, to describe the hostile work environment at Culver City, to discuss her EEO case against Postmaster Strong, and to resend her therapist's note placing her off of work. When MPOO Ledesma did not respond, Plaintiff

followed up via text messages.

43.    Plaintiff's July 8, 2022, email and subsequent text messages to MPOO Ledesma comprised additional requests for a reasonable accommodation under the Rehabilitation Act.

44.    Plaintiff's July 8, 2022, email also comprised Plaintiff's opposition to discrimination.

45.    On July 18, 2023, MPOO Ledesma responded to Plaintiff's email and text messages by emailing, "After hearing your experience in Culver City I could imagine you going back there doesn't feel the most comfortable for you and I do wish you to be comfortable every day that you are at work." MPOO Ledesma offered Plaintiff the opportunity to work at the Redondo Beach Post Office. Plaintiff had no choice but to accept the opportunity in Redondo Beach. If she did not, she would have to return to Culver City. At that point, the Notice of Removal dated July 10, 2023 was still pending and loomed over her. She could not go back to her harassers in Culver City and she needed a job to pay her bills. The reassignment to Redondo Beach was not a reasonable accommodation. MPOO Ledesma and/or other management should have placed Plaintiff back into the Analyst detail or assigned Plaintiff to another similar detail not located in Culver City. In the alternative, Plaintiff should have been assigned to a supervisory detail with a shift schedule and commute similar to the Analyst or other previous positions and not located in Culver City. MPOO Ledesma and/or other management could have offered different reasonable accommodations as well.

46.    On July 24, 2023, Redondo Beach Postmaster Marjorie Watson instructed Plaintiff to report to Redondo Beach the next day at 3:00 a.m. Postmaster Watson failed to provide clear details about the role to which Plaintiff would be assigned, but Plaintiff ultimately worked as Acting Supervisor, Distribution.

47.    Unfortunately, the work conditions at Redondo Beach were intolerable for Plaintiff for several reasons. First, Plaintiff's round trip commute between her home and Redondo Beach was three hours. This was the longest commute she ever had while working at the Postal Service. Second, her shift started at 3:00 a.m. -- a time Plaintiff had never worked before. Plaintiff found it very difficult to adjust. Third, Plaintiff often remained at work well after the shift's scheduled end time of 12:00 p.m. Plaintiff was expected to attend the management meetings scheduled for the afternoons.

48.    Plaintiff's work schedule and commute left her in a constant state of sleep deprivation. Her eating habits, health, and personal interests were completely disrupted. She was not able to maintain a regular schedule for her medication and therapy appointments. Plaintiff's health overall, especially her mental health, worsened as a result.

49.    Additional circumstances that made the working conditions at Redondo Beach intolerable were Postmaster Watson and MPOO Ledesma keeping Plaintiff understaffed while holding Plaintiff to high standards. Plaintiff was often the only employee to perform clerk work and unload pallets, which were duties that required multiple employees at a time. On a daily basis, Plaintiff requested Postmaster Watson, Redondo Beach Supervisor Bradford, and/or MPOO Ledesma to schedule more staff on Plaintiff's shift. Management rarely, if ever, scheduled more staff. This left only Plaintiff to do the work. Clerks would complain about Plaintiff doing their work, saying it violated union contracts. But if Plaintiff did not prepare the mail timely, she would be blamed for causing more mail delays -- a common criticism she was already receiving from Postmaster Watson and MPOO Ledesma.

50.    Furthermore, Plaintiff's attempts to manage employees were unsupported or undermined by management. Management would appease employees when they complained about Plaintiff. This meant that any schedule

changes that were granted as a result of Plaintiff's requests would be reversed once employees complained to management. Some employees would even call Plaintiff homophobic slurs in Spanish or say something offensive under their breath in English.

51.    The intolerable conditions also resulted from Postmaster Watson's threats to Plaintiff about her job at Redondo Beach. Postmaster Watson would say that Plaintiff would be "walked out" or fired for mail delays. Postmaster Watson would also tell Plaintiff that she "stuck her neck out" for Plaintiff to be assigned at Redondo Beach.

52.    Meanwhile, MPOO Ledesma acted cold and distant with Plaintiff, which was a drastic change in demeanor that occurred after MPOO Ledesma reassigned Plaintiff to Redondo Beach. MPOO Ledesma was involved in the day-to-day direction of Plaintiff's work and only communicated with Plaintiff to give her instructions or notify her of performance deficiencies. When Plaintiff worked closely with MPOO Ledesma as an Analyst, Plaintiff never observed MPOO Ledesma directly supervise supervisors at other post offices.

53.    MPOO Ledesma is biased against people who are transgender. When MPOO Ledesma and Plaintiff worked together during Plaintiff's analyst detail, Plaintiff overheard MPOO Ledesma referring to a transgender minor girl using the pronoun "it" rather than "she."

54.    Plaintiff believes that Postmaster Watson was aware of Plaintiff's transgender status. Postmaster Watson was one of MPOO Ledesma's best friends. They spent time together outside of work and would take trips to Mexico together.

55.    The terror of having to return to Culver City motivated Plaintiff's desperate attempts to perform her job well and meet expectations at Redondo Beach. But the conditions eventually became intolerable. She was constructively discharged on September 9, 2023.

# FIRST CAUSE OF ACTION
## HARASSMENT IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### [42 U.S.C. §2000e, et seq.]

56.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

57.     Plaintiff is a transgender woman.

58.     Plaintiff was satisfactorily performing the positions of Analyst and Acting Supervisor.

59.     Under Title VII of the Civil Rights Act of 1964 ("Title VII"), it is an unlawful employment practice for employees to harass other employees on the basis of sex, thereby affecting the terms, conditions, or privileges of their employment.

60.     Plaintiff was subjected to Defendant's intimidating and insulting conduct which was due to her sex, specifically because Plaintiff is transgender, because of Plaintiff's transition from male to female, because of Plaintiff's perceived sexual orientation, and/or because Plaintiff did not conform to Defendant's sex-related preferences, expectations, or stereotypes. Defendant's conduct was unwelcome.

61.     The conduct was made by both coworkers and management. Management knew about the conduct by coworkers and failed to take immediate and appropriate action.

62.     The harassment included several employment actions against Plaintiff, including but not limited to, the removal of Plaintiff from her Analyst detail, the reassignment of Plaintiff to Culver City, the failure to reasonably accommodate Plaintiff, the charging of AWOL, the issuance of a Notice of Removal, the reassignment of Plaintiff to Redondo Beach, the requirement to

work excessively long work hours, the establishment of overly demanding work expectations and goals, and the failure to provide staff support and training. At Redondo Beach, coworkers called Plaintiff homophobic slurs and management subjected Plaintiff's performance to heightened scrutiny and verbally threatened to terminate Plaintiff while a Notice of Removal was already pending.

63.    The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a sex-related hostile work environment.

64.    Plaintiff perceived the working environment to be abusive or hostile.

65.    A reasonable person in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

66.    Defendant has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

67.    Plaintiff was damaged by Defendant's actions.

68.    As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer economic and non-economic damages in amounts to be proven at trial.

69.    As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities, with such damages in amounts to be proven at trial.

///
///
///
///
///
///
///

## SECOND CAUSE OF ACTION
## DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### [42 U.S.C. §2000e]

70.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

71.     Title VII provides that it is an unlawful employment practice for an employer, because of the sex of any person, to discriminate against the person with respect to their compensation, terms, conditions, or privileges of employment. *See* 42 U.S.C. §2000e2(a)(1); *Bostock v. Clayton Cnty., Georgia*, (2020) 590 U.S. 644.

72.     Plaintiff was removed from her Analyst detail with MPOO Ledesma, reassigned to Culver City, not reasonably accommodated, charged AWOL, subjected to a Notice of Removal, reassigned to Redondo Beach, not trained and supported in her role at Redondo Beach, worked excessively long work hours, had overly demanding work expectations and goals, and was constructively discharged.

73.     Plaintiff's transgender status, transition from male to female, perceived sexual orientation, and/or nonconformance with Defendant's sex-related preferences, expectations, or stereotypes were the reasons Defendant subjected Plaintiff to a number of adverse actions, including, but not limited to, ending Plaintiff's detail in the Analyst position, reassigning Plaintiff to the Culver City Post Office, denying a reasonable accommodation request, charging AWOL, issuing a Notice of Removal, reassigning her to a different position at Redondo Beach, withholding training and support to Plaintiff at Redondo Beach, requiring Plaintiff to work excessively long work hours, establishing overly demanding work expectations and goals, and constructively discharging her.

Defendant's actions were based on Plaintiff's transgender status, transition from male to female, perceived sexual orientation, and/or nonconformance with Defendant's sex-related preferences, expectations, or stereotypes as evidenced by the fact that she was treated differently than employees who were cisgender, openly gay, and conformed to sex-related expectations. In addition, Postmaster Strong, MPOO Ledesma, and other management officials harbored biases against individuals who were LGBTQ+.

74.    Defendant has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

75.    Plaintiff was damaged by Defendant's actions.

76.    As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer economic and non-economic damages in amounts to be proven at trial.

77.    As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities, with such damages in amounts to be proven at trial.

## THIRD CAUSE OF ACTION
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## [42 U.S.C. §2000(e)-5(f), et seq.]

78.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

79.    Title VII provides that it is an unlawful employment practice for an employer to discriminate against an employee because they have opposed any practice made an unlawful employment practice or because they have made a charge, testified, assisted, or participated in any manner in an EEO investigation,

proceeding, or hearing. *See* 42 U.S.C. §2000e-3(a).

80.    Plaintiff engaged in activity protected under federal law, that is exercising her EEO rights by filing an EEO complaint and opposing discrimination when she notified MPOO Ledesma of the hostile work environment caused by management and coworkers in Culver City.

81.    Culver City management and MPOO Ledesma were aware of Plaintiff's EEO complaint and opposition to discrimination.

82.    Defendant subjected Plaintiff to adverse employment actions, including deciding to end Plaintiff's detail in the Analyst position, reassign Plaintiff to the Culver City Post Office, deny a reasonable accommodation request, charge AWOL, issue a Notice of Removal, reassign her to a different position at Redondo Beach, withhold training and support to Plaintiff at Redondo Beach, require Plaintiff to work excessively long work hours, establish overly demanding work expectations and goals, and constructively discharge her.

83.    Plaintiff was subjected to these adverse actions based on her protected activity of filing an EEO complaint and opposition to discrimination.

84.    Defendant has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

85.    Plaintiff was damaged by Defendant's actions.

86.    As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer economic and non-economic damages in amounts to be proven at trial.

87.    As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities, with such damages in amounts to be proven at trial.

///

///

# FOURTH CAUSE OF ACTION

# DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

# [29 U.S.C. §791, et seq.]

88.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

89.    It is an unlawful employment practice for an employer, because of an individual's disability, to discriminate against the person in compensation or in terms, condition, or privileges of employment.

90.    Plaintiff suffers from severe depression and other disabilities.

91.    Severe depression is an impairment which substantially limits brain function, and thus, Plaintiff is an individual with a disability protected by disability laws. *See* 29 C.F.R. §1630.2(j)(3)(iii).

92.    Plaintiff's disability substantially limits several major life activities. Those major life activities include caring for oneself, eating, speaking, concentrating, thinking, communicating, interacting with others, and working.

93.    Plaintiff was qualified to perform the duties of Carrier Technician, Analyst, and Acting Supervisor.

94.    Plaintiff did not report to work at Culver City because management's order to report there triggered Plaintiff's severe depression due to the hostile work environment by coworkers and management at Culver City. Plaintiff requested the reasonable accommodation of leave.

95.    Postmaster Strong and MPOO Ledesma were aware of the Plaintiff's disabilities.

96.    On multiple occasions, starting on June 5, 2023, Plaintiff requested the reasonable accommodation of leave from Defendant due to a disability.

97.    Defendant did not respond to the requests, failed to engage in the interactive process, charged Plaintiff AWOL, issued a Notice of Removal,

reassigned her to Redondo Beach, and constructively discharged her.

98.    Defendant's charges of AWOL, issuance of the Notice of Removal, reassignment to Redondo Beach, and failure to consider other forms of reasonable accommodation constituted Defendant's failure to engage in an interactive process with Plaintiff and to provide Plaintiff with a reasonable accommodation. Defendant's conduct led to Plaintiff's constructive discharge.

99.    By failing to reasonably accommodate Plaintiff, Defendant discriminated against her based on her disabilities.

100.    Defendant subjected Plaintiff to a number of adverse actions, including but not limited to charging AWOL, issuing a Notice of Removal, reassigning Plaintiff to Redondo Beach, withholding training and support to Plaintiff at Redondo Beach, requiring Plaintiff to work excessively long work hours, establishing overly demanding work expectations and goals, and constructively discharging her. Defendant's actions were based on Plaintiff's disabilities.

101.    Defendant has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

102.    Plaintiff was damaged by Defendant's actions.

103.    As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer economic and non-economic damages in amounts to be proven at trial.

104.    As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities, with such damages in amounts to be proven at trial.

///

///

///

COMPLAINT

**FIFTH CAUSE OF ACTION**

**FAILURE TO REASONABLY ACCOMMODATE IN VIOLATION OF THE REHABILITATION ACT**

**[29 U.S.C. §791, et seq.]**

105.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

106.   It is unlawful employment practice for an employer to deny a reasonable accommodation to a qualified individual with a disability.

107.   On multiple occasions, starting on June 5, 2023, Plaintiff requested the reasonable accommodation of leave from Defendant due to a disability.

108.   Defendant did not respond to the requests, failed to engage in the interactive process, charged Plaintiff AWOL, issued a Notice of Removal, reassigned her to Redondo Beach, and constructively discharged Plaintiff.

109.   Defendant could have granted a reasonable accommodation that would have enabled Plaintiff to perform the essential functions of her job. Defendant could have given Plaintiff leave, reassigned Plaintiff to the Analyst detail again, or reassigned Plaintiff into vacant, funded positions outside of Culver City that involved a similar commute and work schedule as the Analyst position.

110.   Granting Plaintiff leave, reassigning Plaintiff to the Analyst detail again, or reassigning Plaintiff into vacant funded positions outside of Culver City would not have imposed an undue hardship on Defendant.

111.   Defendant failed to reasonably accommodate Plaintiff.

112.   Defendant has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

113.   Plaintiff was damaged by Defendant's actions.

COMPLAINT

114.   As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer economic and non-economic damages in amounts to be proven at trial.

115.   As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities, with such damages in amounts to be proven at trial.

## SIXTH CAUSE OF ACTION
## HARASSMENT IN VIOLATION OF THE REHABILITATION ACT
### [29 U.S.C. §791, et seq.]

116.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

117.   Under the Rehabilitation Act, it is an unlawful employment practice for employees to harass other employees on the basis of their disability, thereby affecting the terms, conditions, or privileges of their employment.

118.   Plaintiff was subjected to Defendant's intimidating and insulting conduct which was due to her disabilities. Plaintiff's conduct was unwelcome.

119.   The harassment included several employment actions against Plaintiff, including but not limited to, the removal of Plaintiff from her Analyst detail, the reassignment of Plaintiff to Culver City, the failure to reasonably accommodate Plaintiff, the charging of AWOL, the issuance of a Notice of Removal, the reassignment of Plaintiff to Redondo Beach, the requirement to work excessively long work hours, the establishment of overly demanding work expectations and goals, and the failure to provide staff support and training. At Redondo Beach, coworkers called Plaintiff homophobic slurs and management subjected Plaintiff's performance to heightened scrutiny and verbal threats of termination while a Notice of Removal was already pending.

COMPLAINT

120.   The conduct was sufficiently severe or pervasive to alter the condition of Plaintiff's employment and created a disability-related hostile work environment.

121.   Plaintiff perceived the working environment to be abusive or hostile.

122.   A reasonable person in Plaintiff's circumstances would consider the working environment to be abusive or hostile.

123.   Defendant has intentionally, deliberately, willfully, and callously disregarded the rights of Plaintiff.

124.   Plaintiff was damaged by Defendant's actions.

125.   As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer economic and non-economic damages in amounts to be proven at trial.

126.   As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities, with such damages in amounts to be proven at trial.

## SEVENTH CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE REHABILITATION ACT
### [29 U.S.C. §791, et seq.]

127.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

128.   It is an unlawful employment practice to retaliate against an employee for their participation in protected activity.

129.   Plaintiff engaged in protected activities when she requested reasonable accommodations in her emails and text messages to MPOO Ledesma asking for leave after she was instructed to return to Culver City. She also engaged in protected activity when she requested MPOO Ledesma to take leave

COMPLAINT

to attend Plaintiff's weekly therapy sessions.

130.   MPOO Ledesma failed to respond to Plaintiff's requests for leave which Plaintiff made after receiving the order to report to Culver City. Instead, Plaintiff was charged with AWOL, received a Notice of Removal, was reassigned to Redondo Beach where she was forced to work in intolerable conditions, and was constructively discharged.

131.   Denying Plaintiff's requests for reasonable accommodation, charging Plaintiff AWOL, issuing a Notice of Removal, reassigning to Redondo Beach, and constructively discharging her in reprisal for her protected activities violated the Rehabilitation Act.

132.   Plaintiff was damaged by Defendant's actions.

133.   As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer economic and non-economic damages in amounts to be proven at trial.

134.   As a direct and proximate result of Defendant's willful, knowing, and intentional actions against her, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities, with such damages in amounts to be proven at trial.

///
///
///
///
///
///
///
///
///
///

## **PRAYER**

WHEREFORE, Plaintiff prays this court to issue judgment against Defendant as follows:

    A.    For economic damages, according to proof;

    B.    For non-economic damages, according to proof;

    C.    For injunctive relief, relating to ensuring a workplace free of discrimination, harassment, and retaliation;

    D.    For injunctive relief, relating to engaging in the interactive process and reasonably accommodating employees;

    E.    For reasonable attorney's fees according to proof;

    F.    For any costs incurred by Plaintiff in bringing this action;

    G.    For such relief as the Court deems may be just and proper.


Respectfully submitted,

Dated:  October 28, 2024        LAW OFFICES OF ANGEL J. HORACEK, PC


_____

Angel J. Horacek
Iryll Robbins-Umel
Attorneys for Plaintiff Amelia Scannell

COMPLAINT