UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA SCANNELL, an individual, <br><br> Plaintiff, <br><br> v. <br><br> LOUIS DEJOY, Postmaster General, United States Postal Office, <br><br> Defendant. | Case No.  2:24-cv-09280-WLH (MAR) <br><br> **ORDER RE MOTION TO DISMISS [18]** |

The Court is in receipt of Defendant Louis DeJoy's Motion to Partially Dismiss Plaintiff's First Amended Complaint ("Motion" or "Mot.," Docket No. 18), Plaintiff Amelia Scanell's Opposition to the Motion ("Opp'n," Docket No. 19) and Defendant's Reply in Support of the Motion ("Reply," Docket No. 20).  No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter.  (See Standing Order, Docket No. 9 at 16).  Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.  The hearing calendared for April 25, 2025, is **VACATED**, and the matter taken off calendar.  For the following reasons, the Court **DENIES** the Motion in its entirety.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff Amelia Scannell is a former United States Postal Worker who began her career as a City Carrier Assistant ("CCA") in Chicago in February 2020. (First Amended Complaint ("FAC"), Docket No. 14 ¶ 6). In January of 2021, she moved to Los Angeles and started to work as a CCA at the Culver City Post Office. (*Id.* ¶ 7).

During the time at issue in the Complaint, Plaintiff "presented as male and used a different name in the workplace." (*Id.* ¶ 8). In private, she was undergoing a gender transition process. (*Id.* ¶ 8). Plaintiff was reluctant to present herself as a woman at work due to an allegedly anti-LGBTQ+ environment created by other employees. (*Id.* ¶ 13). Plaintiff "constantly" heard offensive remarks about gay people and gay stereotypes at work. (*Id.* ¶ 14). In one instance, Postmaster of Culver City, Roderick Strong ("Postmaster Strong") told Plaintiff "I'm not a f****t but you smell amazing." (*Id.* ¶ 13).

Additionally, during the time at issue in the Complaint, Plaintiff had been diagnosed with depression. (*Id.* ¶ 9). Plaintiff was hospitalized for three days in March of 2021. (*Id.* ¶ 9). Postmaster Strong was aware that Plaintiff had been hospitalized for a mental disability. (*Id.*)

In June of 2022, Plaintiff was assigned a 204B Acting Closing Supervisor detail. (*Id.* ¶ 11). In that role, she received an additional dollar per hour and took on additional responsibilities, including supervising mail carriers. (*Id.*) When Plaintiff started the role, her official title was still CCA, but in July or August of 2022 her official title was promoted to Carrier Technician. (*Id.*) The promotion came with higher pay and better benefits. (*Id.*) Plaintiff continued to work as the 204B Acting Closing supervisor after her promotion. (*Id.*)

On or about August 10, 2022, Plaintiff was outed as transgender at work. (*Id.* ¶ 15). One of plaintiff's co-worker "observed an online profile picture of Plaintiff appearing as a woman on an instant messaging application" and shared the pictures

with a few co-workers. (*Id.*) Plaintiff asked the co-workers to keep things private, but news of Plaintiff's transition spread quickly through the office. (*Id.*) By late in the day on August 10, "carriers wanted to talk to Plaintiff about the picture and about her being transgender." (*Id.*)

"In the following days, weeks, and months, different employees constantly approached Plaintiff while she was working to comment and ask questions about Plaintiff's genitalia, sexual acts, and more." (*Id.* ¶ 16). Co-workers made statements, some "outright and explicitly derogatory," to Plaintiff about her transition or their perceptions of Plaintiff's sexual orientation. (*Id.*) Additionally, co-workers shared information about their own sexual activities and fantasies with Plaintiff even though these employees had never spoken to Plaintiff about these topics before. (*Id.*) Though Plaintiff communicated that she was not interested in speaking with colleagues about her transition, comments and questions persisted. (*Id.* ¶ 17).

After Plaintiff was outed, some employees became uncooperative and stopped complying with her work instructions. (*Id.*) One coworker told Plaintiff "Never touch my fucking timecard again. See what happens. I'll fuck you up, j***," a homophobic slur in Spanish. (*Id.* ¶ 18). Another co-worker referred to Plaintiff by a feminine version of Plaintiff's deadname[1] and shared that she planned to spread the photograph of Plaintiff presenting as woman everywhere in order to "teach [Plaintiff] as lesson." (*Id.*)

In August 2022, Plaintiff initiated an Equal Employment Opportunity ("EEO") Complaint process in EEO Case No. 4E-900-0250-22 ("Plaintiff's First EEO Case") to address the above allegations. (*Id.* ¶ 17). After Plaintiff initiated the process, news of her transition reached Culver City Post Office's management. (*Id.* ¶ 20). One

---

[1] "The practice of referring to someone by their birth or given name instead of a name they have chosen to align with their identity and have asked others to use is called 'deadnaming.'" *Equal Emp. Opportunity Comm'n v. Sis-Bro Inc.*, No. 24-CV-968-JPG, 2024 WL 3845359, at *2 n.1 (S.D. Ill. Aug. 16, 2024)

supervisor openly discussed Plaintiff's transition with other employees." Postmaster Strong, who had previously praised Plaintiff's work and stated an intention to promote her, "started to act distant and cold toward Plaintiff." (*Id.* ¶ 21). On or about November 17, 2022, Postmaster Strong removed Plaintiff from her 204B Acting Supervisor detail. (*Id.* ¶ 22). Plaintiff was replaced with another employee who was not openly gay or transgender. (*Id.*)

Plaintiff started pursuing opportunities outside of Culver City Post Office. (*Id.* ¶ 24). In November 2022, with help from second-line supervisor Manager Post Office Operation Iris Ledesma ("MPOO Ledesma"), Plaintiff transferred into an Acting Supervisor detail at the Venice Post Office. (*Id.*) In December 2022, Plaintiff and relevant parties reached a settlement in Plaintiff's First EEO Case. (*Id.* ¶ 25). The settlement agreement stated, "Management (Roderick Strong) will not impede on the Counselee's… upward mobility; however, management cannot guarantee the Counselee will be promoted or given other supervisory opportunities outside of the Culver City Post Office." (*Id.*) Plaintiff continued her detail at the Venice Post Office. (*Id.*)

In January 2023, Plaintiff began working in an Analyst detail for MPOO Ledesma. (*Id.*) In that role, Plaintiff performed management responsibilities and Human Resources-related tasks and traveled with MPOO Ledesma to different post offices. (*Id.*) Plaintiff's Analyst detail was extended beyond its originally scheduled time period, and MPOO Ledesma informed Plaintiff that she planned to convert Plaintiff's detail into a permanent position. (*Id.* ¶ 26).

On or around May 7, 2023, Postmaster Strong requested that MPOO Ledesma return Plaintiff to Culver City Post Office. (*Id.* ¶ 26). MPOO Ledesma rejected Postmaster Strong's initial request. (*Id.*) Plaintiff was "terrified" at the prospect of returning to the Culver City Post Office. (*Id.*) She also believed that returning to Culver City Post Office would constitute a breach of her settlement agreement given that Plaintiff would be removed from the Analyst detail. (*Id.*).

4

On or about May 15, 2023, Plaintiff informed MPOO Ledesma of her mental disability and requested one hour of leave per week to attend therapy session. (*Id.*). About two days later, Plaintiff was ordered to end her Analyst detail and to return to Culver City Post Office to carry mail. (*Id.* ¶ 31).

The order to return to Culver City Post Office had a tremendous impact on Plaintiff's mental and physical health and exasperated her depression symptoms. (*Id.* ¶ 34). "The thought of returning to her harassers at Culver City rendered her unable to get out of bed." (*Id.*) Administrative records reflect that Plaintiff was absent from work for much of the end of May. (Ex. 8 to Cedola Decl. ("Absence Records"), Docket No. 18-9).

On May 28, Plaintiff's therapist wrote a letter addressed to the "US Postmaster" placing Plaintiff "off of work" from May 28, 2023, to July 28, 2023. (FAC). On or about June 5, 2023, Plaintiff presented MPOO Ledesma with the letter and requested an accommodation in the form of leave. (*Id.*; Ex. 6 to Cedola Decl.). MPOO Ledesma did not respond to Plaintiff's request. (FAC ¶ 35).

On or about June 8, 2023, Plaintiff contacted EEO Counselor Marisha Satchell and noted that she believed Postmaster Strong was in breach of the settlement agreement regarding Plaintiff's First EEO Case. (*Id.* ¶ 39). Plaintiff and Ms. Satchell spoke on the phone shortly thereafter, and Ms. Satchell allegedly discouraged Plaintiff from moving forward with allegations that Postmaster Strong breached the settlement. (*Id.* ¶ 59). Also on June 8, 2023, Plaintiff failed to report to Culver City for an investigative interview. (*Id.* ¶ 36; *see also* Ex. 7 to Cedola Decl. ("Notice of Investigative Interview")).[2] Plaintiff continued to miss work throughout the month of June. (Absence Records). Plaintiff was charged as Absent Without Leave ("AWOL") for many of her absences. (FAC ¶ 36).

---

[2] It is unclear whether the investigative interview was related to Plaintiff's absence or another matter.

On July 8, 2023, Plaintiff emailed MPOO Ledesma. (*Id.* ¶ 36; Ex. 9 to Cedola Decl. ("Emails between Scannell and Ledesma")). In the email, Plaintiff came out to MPOO Ledesma as transgender, described Plaintiff's previous issues at Culver City Post Office, detailed her First EEO Case and reattached the letter from Plaintiff's therapist. (*Id.* ¶ 43; Emails between Scannell and Ledesma at 1-4).

On or about July 10, 2023, the United States Postal Service issued a Notice of Removal to Plaintiff on the grounds of her unscheduled absences, including AWOL absences from the period covering May 27, 2023, to June 30, 2023. (FAC ¶ 37). Plaintiff filed a grievance over the Notice of Removal. (*Id.* ¶ 42).

On July 18, 2023, MPOO Ledesma responded to Plaintiff's earlier email and offered her the chance to work at Redondo Beach Post Office. (*Id.* ¶ 46; Emails between Scannell and Ledesma at 5-6). Plaintiff commenced work at Redondo Beach Post Office on July 24, 2023. (FAC ¶ 47). Plaintiff alleges that the work conditions were intolerable. Plaintiff's round trip commute was three hours, Plaintiff's shift started at 3:00 a.m. and Plaintiff was expected to remain at work past the shift's scheduled end time. (*Id.*) Plaintiff alleges that upper-level management kept Plaintiff understaffed while holding Plaintiff to unreasonably high standards (*id.* ¶ 50), undermined Plaintiff's attempt to manage employees (*id.* ¶ 51) and made threats to fire Plaintiff (*id.* ¶ 52).

On August 23, 2023, the process in EEO Case No. 4E-900-0229-23 ("Plaintiff's Second EEO Case") commenced. The exact facts of how the process commenced is unclear from the Complaint and the administrative record. In the Complaint, Plaintiff alleges that on August 23, 2023, "after the deadline to raise the allegation had passed," EEO Counselor Satchell "decided to initiate" Plaintiff's allegations. (*Id.* ¶ 60). Plaintiff's second EEO complaint, however, reflects that on August 23, 2023, "Ms. Scannell contacted an EEO Counselor to initiate the instant case." (Exhibit 3 to the Cedola Decl., "Formal Complaint in Second EEO Case," Docket No. 18-4 at 4).

On September 9, 2023, Plaintiff resigned from the United States Postal Service. (*Id.* ¶ 60). Plaintiff alleges that she was constructively discharged due to intolerable conditions. (*Id.* ¶ 56). After her resignation, Plaintiff proceeded with her EEO cases. (*See* ¶¶ 60-63 (describing administrative proceedings after Plaintiff's resignation)). Neither the timeliness of Plaintiff's Formal EEO Complaints nor the filing of her present federal case are at issue in the Motion. As such, the Court does not detail post-resignation EEO activities.

### B. Procedural Background

On October 28, 2024, Plaintiff filed her case in federal court. (Docket No. 1). On February 6, 2025, Plaintiff filed a First Amended Complaint. ("FAC," Docket No. 15). Plaintiff's First Amended Complaint outlines seven causes of actions: (1) sex-based hostile work environment in violation of Title VII; (2) sex-based disparate treatment in violation of Title VII; (3) retaliation in violation of Title VII; (4) disability-based disparate treatment in violation of the Rehabilitation Act; (5) failure to reasonably accommodate in violation the Rehabilitation Act; (6) disability-based hostile work environment in violation of the Rehabilitation Act; and (7) retaliation in violation of the Rehabilitation Act. (*See generally Id.*)

Defendant filed the present Motion on March 24, 2025. (Mot.) Defendant concurrently filed the declaration of Leslie Cedola, a records custodian for USPS's EOO complaints, and excerpts from the administrative records of Plaintiff's First and Second EEO Cases. (Dockets No. 18-1 through 18-11). Plaintiff filed a timely Opposition. (Opp'n). Plaintiff concurrently filed a Declaration with additional portions of the administrative record of Plaintiff's First and Second EEO cases (Robbins-Umel Decl., Docket No. 19-2), a Request for Judicial Notice (Docket No. 19-1) and a Declaration by Plaintiff Amelia Scannell. (Docket No. 19-2). Defendant filed a timely reply. (Reply).

## II.    DISCUSSION

Defendant does not seek to dismiss the First Amended Complaint in its entirety. Instead, Defendant seeks to dismiss (1) all allegations regarding five incidents on the grounds that Plaintiff failed to exhaust administrative remedies regarding those incidents; (2) allegations regarding discrete acts of discrimination from Plaintiffs' hostile work environment causes of action on the grounds that discrete acts cannot support hostile work environment claims; and (3) allegations regarding EEO Counselor Satchell's actions from Plaintiff's Title VII retaliation claim. (*See generally* Mot.). Defendant argues that with the aforementioned allegations dismissed, Plaintiff fails to state a claim for three causes of action: disability discrimination (Mot. at 13); failure to accommodate (Mot. at 5); and disability-based hostile work environment (Mot. at 6).

### A.    Legal Standard

Defendant moves to dismiss portions of the First Amended Complaint under both Rule 12(b)(6) and Rule 12(b)(1). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the

8

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

Under Rule 12(b)(1), a Defendant may move to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P 12(b)(1). 12(b)(1) motions may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "In a factual attack," by contrast, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving a factual attack, a district court may typically review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.[3] *Id.*

---

[3] In resolving Defendant's Motion to Dismiss, the Court relies on the portions of the administrative record submitted by the Defendant as exhibits to the Cedola Decl. (Docket Nos. 18-2 through 18-11) and by Plaintiff as part of the Robbins-Umel Decl. (Docket No. 19-2). "In the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record. *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 993448, at *9 (N.D. Cal. Mar. 4, 2015) (collecting cases). The Court additionally GRANTS Plaintiff's request for Judicial Notice of the Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO-MD-110) as revised August 5, 2015, Chapter 2, Section III, titled, "The Roles and Responsibilities of an EEO Counselor." (Request for Judicial Notice, Docket No. 19-1). The Court does not rely on the Declaration of Amelia Scannell (Docket No. 19-3) and thus does not address the propriety of considering that Declaration.

**B.**     **Administrative Exhaustion Issues**

Defendant argues that allegations regarding five specific incidents—allegations which appear throughout Plaintiff's causes of action—should be dismissed from the Complaint due to Plaintiff's failure to administratively exhaust the claims at issue in the allegations.  Defendant does not make clear whether he is moving to dismiss allegations regarding the five incidents under 12(b)(1) or under 12(b)(6).

Before bringing a Title VII or Rehabilitation Act claim in a federal district court, a federal employee must first exhaust their administrative remedies.  42 U.S.C. § 2000e–16(c); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985) (holding that federal employees must comply with Title VII's exhaustion requirements when bringing claims under the Rehabilitation Act).  To exhaust administrative remedies, a federal employee must typically notify an EEO counselor of discriminatory conduct within 45 days of the conduct and, if the matter is not resolved, file a timely formal administrative complaint.  *Sommatino v. United States*, 255 F.3d 704, 707-08 (9th Cir. 2001).  "[A]bandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review."  *Id.*

Under Ninth Circuit case law "substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency is a jurisdictional prerequisite."  *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001).  That is, district courts lack subject matter jurisdiction over claims for which a plaintiff fails to substantially comply with administrative exhaustion requirements.  Because case law is clear that "not all administrative exhaustion requirements are jurisdictional in nature," *which* specific exhaustion requirements are jurisdictional "is a matter of debate among the [lower] courts."  *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 993448, at *8-9 (N.D. Cal. Mar. 4, 2015) (detailing debate over whether the 45-

10

day requirement is a jurisdictional prerequisite or a precondition to suit like statute of limitations to be addressed under Rule 12(b)(6)).

### i.  Failure to Seek Timely EEO Counseling

Defendant argues that allegations regarding three incidents are barred due to Plaintiff's failure to seek timely EEO counseling on the claims:  (1) Plaintiff's removal from her analyst detail and reassignment to Culver City Post Office on May 16, 2023; (2) Defendant's alleged failure to reasonably accommodate Plaintiff in June 2023; and (3) Plaintiff being charged AWOL in May and June 2023 (collectively, "May and June 2023 Incidents.").  (Mot at 11-13).   Allegations regarding these incidents appear in each of Plaintiff's seven causes of action.

Under EEOC regulations, "[a]ggreived persons…must consult a [EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter," 29 C.F.R. § 1614.105(a).  Aggrieved persons generally must contact a EEO Counselor within 45 days of the allegedly discriminatory matter, *Id*. § 1614.105(a)(1), though the 45-day time limit is "subject to waiver, estoppel and equitable tolling."  *Id*. § 1614.604(c).

Plaintiff's formal EEO complaint notes that Plaintiff contacted an EEO Counselor about the claims on August 23, 2023.  (Formal Complaint in Second EEO Case).[4]   Defendant thus argues that the Court must dismiss allegations regarding the May and June 2023 Incidents, which occurred more than 45 days before August 23, 2023.  (Mot. at  11-13).  Plaintiff argues that her contact with EEO Counselor Satchell on June 8, 2023—briefly described at paragraph 59 of the First Amended Complaint—satisfied the 45-day requirement (Mot. at 7-8), particularly considering Satchell's alleged failure to process the relevant claims.  (Mot. at 8-11).  Relatedly, Plaintiff argues that estoppel applies to the 45-day requirement such that the Court should allow allegations regarding the May and June 2023 Incidents to proceed even

---

[4] The Court refers to the ECF assigned page numbers given inconsistent numbering in the exhibits themselves.

if Plaintiff did not comply with the 45-day requirement. (Mot. at 15-17). Finally, Plaintiff argues that the May and June 2023 Incidents are "like or reasonably related" to incidents which were undisputably reported within the 45-day window such that Plaintiff can proceed with the May and June 2023 Incidents, even if Plaintiff failed to comply with the 45-day requirement. (Mot. 12-14). The Court, ultimately, does not reach the majority of these arguments.

Defendant cites to no cases where a court lacked subject matter jurisdiction—or otherwise dismissed a claim—due to a plaintiff's failure to comply with requirement to seek EEO counseling within 45-days (the "45-day Requirement"). Defendant's sole case citation in the relevant portion of the Motion (Mot. at 11-13) and Reply (Reply at 2-3) is to a case where the Ninth Circuit *reversed* a district court's holding that a plaintiff failed to exhaust administrative remedies for failure to comply with the 45-day requirement. *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 (9th Cir. 2009) (finding that plaintiff's consultation with EEO Officer, rather than EEO Counselor within 45 days of an alleged discrimination did not bar the claim but remanding for district court to determine if plaintiff exhibited an intent to begin the EEO process).

Instead, cases cited in other sections of Defendant's briefing suggest that the Court has jurisdiction over claims stemming from the May and June 2023 Incidents. In *B.K.B. v. Maui Police Dep't*, which Defendant cites on page 10 of the Motion, the Ninth Circuit makes clear that "[s]ubject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's *actual investigation* or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002), *abrogated on other grounds by Fort Bend County, Texas v. Davis*, 587 U.S. 541 (2019) (*quoting E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)) (emphasis in the original). The evidence before the Court establishes that the three claims which Defendant claims are time-barred were *actually investigated* by

the EEOC.  The United States Postal Service's Final Agency Decision reflects that all three claims were actually investigated by the EEOC.  (Exhibit B to Robbins-Umel Decl.,("Final Agency Decision re Plaintiff's Second EEO Complaint"); *See also* Exhibit 4 to Cedola Decl. ("Investigative Summary"), Docket No. 18-5 at 1 (reflecting that USPS would investigate the May and June 2023 incidents).

In sum, the Court appears to have subject matter jurisdiction over claims stemming from the May and June 2023 Incidents.  Defendant has not otherwise convinced the Court that it would be appropriate to dismiss the claims.  The Court, therefore, **DENIES** Defendant's Motion as to the May and June 2023 Incidents.  The Court likewise **DENIES** Defendant's Motion to Dismiss as to Plaintiff's Fourth and Fifth Causes of Action.  *See* (Mot. at 13 ("[B]ecause the FAC fails to state a claim for Disability Discrimination (Claim 4) and Failure to Accommodate (Claim 5) in the absence of these [May and June 2023 Incident] allegations, Defendant respectfully requests that Claims 4 and 5 be dismissed.")).

### ii. Administrative Abandonment

Defendant contends that Plaintiff administratively abandoned two claims: (1) disability discrimination stemming from Plaintiff's end of her detail at Culver City on May 16, 2023; and (2) disability discrimination stemming from Plaintiff's July 2023 assignment to Redondo Beach Post Office.  (Mot. at 13).  Defendant therefore moves to dismiss allegations regarding these incidents—which appear in Plaintiff's fourth and sixth causes of action—from the Complaint.

Defendant's treatment of administrative abandonment is terse.  In the Motion, Defendant cites two cases for the proposition that a court must dismiss claims which a plaintiff previously abandoned in the administrative process.  (Mot. at 13 (citing *Vinieratos*, 939 F.2d at 769-71; *Rivera*, 830 F.2d at 1039)).  Defendant then declares that Plaintiff administratively abandoned the two claims in question, citing to Cedola Decl. ¶ 4.a.  (*Id.*)  Defendant argues finally, providing no citation to the record, that

13

"[b]ecause Plaintiff withdrew the disability purview from these claims, they were not investigated by the USPS and cannot now form the basis of suit." (*Id.*)

Defendant's sole citation to the record is to Cedola Decl. ¶ 4.a., which simply notes that the Formal Complaint in Plaintiff's Second EEO Case is attached as Exhibit 3 to the Cedola Declaration. (Cedola Decl. ¶ 4.a). Defendant does not point the Court to a particular portion of the Second EEO Complaint and Defendant does not explain how the Second EEO Complaint demonstrates administrative abandonment. (Mot. at 13).

The burden of representation lies upon Defendant, not the Court. *U-Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*, Case No. 2:12-CV-00231, 2013 WL 4505800, at *2 (D. Nev. Aug. 21, 2013). "[T]he Court will not perform the work of representing the parties ....". *Id.* Nor will the Court hunt for truffles buried in the administrative record.[5] *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Given the absence of an explanation from Defendant of how the record demonstrates that Plaintiff abandoned the two disability claims in questions, the Court cannot find that it lacks subject matter jurisdiction over the claims or that the Court should otherwise dismiss the claims. The Court, therefore, **DENIES** the Motion to Dismiss as to the allegedly abandoned disability claims.

### C.   Discrete Acts of Discrimination

Defendant next argues that allegations of discrete acts cannot support a hostile work environment claim. (Mot. at 14-16; *see also* Reply at 9 ("The Motion argued that under *Porter* and *Morgan*, discrete acts may not be considered in stating a HWE

---

[5] In her Opposition, Plaintiff theorizes that Defendant meant to cite to a different portion of the administrative record. (Opp'n at 20). Plaintiff then attempts, without the benefit of Defendant's briefing, to rebut what Plaintiff imagines to be Defendant's argument. (*Id.*) Defendant engages this argument in the Reply Brief. (Reply at 8-9). It was not incumbent upon Plaintiff to represent the Defendant and the Court will not punish Plaintiff for her attempt to do so by entertaining the argument. *See FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply.")

claim.")). Defendant therefore asks the Court to dismiss allegations regarding discrete acts from Plaintiff's first cause of action for sex-based hostile work environment. (Mot. at 15-16).[6] Defendant further seeks to dismiss, in its entirety, Plaintiff's sixth cause of action for disability-based hostile work environment, which Defendant contends is entirely dependent on discrete acts. (Mot. at 14-15). Plaintiff disputes Defendants' interpretation of the law and argues that discrete acts *can* support a hostile work environment claim. The parties cite to three binding cases, all of which addressed the timeliness of claims.

In *Morgan*, the Supreme Court analyzed whether a plaintiff's Title VII claims were timely. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002). To reach its conclusion, the Supreme Court first had to determine when an unlawful employment practice "occurred." *Id.* at 110. The Court noted that the answer to varied based on whether the unlawful employment practice in question was a "discrete discriminatory act" or a claim of a "hostile work environment." *Id.*

The Supreme Court concluded that a discrete discriminatory act "such as termination, failure to promote, denial of transfer, or refusal to hire," *id.* at 114, "'occurred' on the day it 'happened,'" *id.* at 110. "Each discrete discriminatory act," therefore, "starts a new clock for filing charges on that act." *Id.* at 113. By contrast, because a "hostile work environment claim is composed of a serious of separate acts that collectively constitute one 'unlawful employment practice,'" the hostile work environment "occurs" so long as a hostile work environment persists. *Id.* at 117. Thus, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* While *Morgan* explored the difference

---

[6] Defendant acknowledges that Plaintiff alleges non-discrete acts (allegations regarding slurs, gossip, derogatory comments) in support of her sex-based hostile work environment claim and thus does not move to dismiss the cause of action in its entirety.

between hostile environment claims and claims of "discrete acts," *see Morgan*, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts."), *Morgan* did not specifically hold that allegations of discrete acts could not support a hostile environment claim.

Following *Morgan*, the Ninth Circuit examined the timeliness of a hostile work environment claim premised on both discrete and non-discrete acts. *Porter v. California Dep't of Corr.*, 419 F.3d 885, 892-95 (9th Cir. 2005). In *Porter*, at least some of the discrete actions were timely. *See id.* at 893 (referencing "recent discrete acts"). The Ninth Circuit noted that while "it would be tempting to conclude that all offensive activities" the plaintiff endured over the course of six years were "timely and actionable" as part of the same unlawful employment practice, "such an approach would blur to the point of oblivion the dichotomy between discrete acts and a hostile environment." *Porter*, 419 F.3d at 892. The Ninth Circuit, citing to *Morgan*, wrote:

> [W]e refuse to mix recent discrete acts like tinder with the planks of ancient sexual advances and then, regardless of whatever it was that set the spark in the furnace, call the fire that ignites therefrom a hostile environment. If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts.

*Id.* at 893. Some district courts have interpreted *Porter* to mean that "a discrete act *cannot* be part of a hostile work environment claim . . ." *Rekow v. Sebelius*, No. CIV. 10-8156-PCT-PGR, 2011 WL 1791272, at *3 (D. Ariz. May 11, 2011) (emphasis) (collecting cases); *see also Yonemoto v. Shinseki,* 3 F. Supp. 3d 827, 845 (D. Haw. 2014) ("Porter teaches that Plaintiff's allegations of discrete acts are separate from the allegations of non-discrete acts making up his hostile work environment claim."); *Adeyemi v. Garland*, No. EDCV 21-2107 JGB (DTBX), 2024 WL 4467998, at *15 (C.D. Cal. July 18, 2024) (assigning all allegations of discrete acts to plaintiffs' disparate treatment and retaliation claims and assigning all allegations of non-discrete acts to hostile work environment claim).

*Lui v. DeJoy*, a recent Ninth Circuit case, however, appears to reject district courts' interpretation that discrete acts must be excised from hostile work environment claims. 129 F.4th 770, 781 (9th Cir. 2025). In *Lui*, the Ninth Circuit evaluated whether a plaintiff had administratively exhausted her hostile work environment claim. *Id.* To administratively exhaust a hostile work environment claim, a plaintiff must seek timely counseling on at least one act "contributing to the claim." *Id.* The only act for which plaintiff timely sought counseling was a "notice of proposed downgrade." *Id.* The district court concluded that the notice was a discrete adverse employment action which could not "rekindle an [otherwise] untimely hostile work environment claim." *Lui v. DeJoy*, No. 3:21-CV-05030-BHS-TLF, 2023 WL 3269760, at *9 (W.D. Wash. May 5, 2023), *aff'd in part, vacated in part, rev'd in relevant part*, 129 F.4th 770 (9th Cir. 2025) (*citing Porter*, 419 F.3d at 893).

The Ninth Circuit reversed. The Ninth Circuit explained that while the notice of proposed downgrade "could constitute a discrete adverse employment action . . . that does not mean that the notice could not also have been part of the series of actions that cumulatively constituted a hostile work environment." *Id.* Indeed, the Ninth Circuit concluded that based on the facts of the case, "the notice of proposed downgrade was thus a part—indeed, the culmination—of the actions that Lui contends created a hostile work environment at the Shelton Post Office." *Id.* at 781-82.

In light of *Lui*, where the Ninth Circuit considered a discrete act as part of a hostile work environment claim, the Court cannot agree with Defendant that "discrete acts may not be considered in stating a HWE claim." (Reply at 9).[7] Defendant makes no other argument as to why the Court should dismiss Plaintiff's sixth cause of action

---

[7] The Court notes the tension between *Porter*, which appeared to hold that a hostile work environment claim must include timely, non-discrete acts, and *Lui*, which found that a hostile work environment claim could proceed when the only timely act was a discrete adverse employment action. The Court need not resolve this tension to resolve the pending Motion because *Lui* clarifies that discrete acts can support a hostile work environment claim and *Porter* does not preclude that holding.

17

for disability-based hostile work environment or why the Court should dismiss Plaintiff's allegations regarding discrete actions from Plaintiff's first cause of action for sex-based hostile work environment.  The Court, therefore, **DENIES** the Motion as to those claims.

D. **<u>Allegations of Interactions with Ms. Satchell Within Plaintiff's Title VII</u>**
   **<u>Retaliation Cause of Action</u>**

Defendant finally moves to dismiss allegations of Plaintiff's interactions with Ms. Satchell from Plaintiff's third cause of action for Title VII Retaliation.  (Mot. at 16).[8]  Defendant argues that Plaintiff's interactions with Ms. Satchell, summarized in paragraph 92 of the First Amended Complaint, cannot "constitute adverse action for purpose of a retaliation claim."  (Mot. at 16).  Paragraph 92 reads:

> Defendant's EEO counselor Marisha Satchell subjected Plaintiff to retaliation when Ms. Satchell did the following: failed to process Plaintiff's allegation that Defendant had breached the EEO settlement agreement; agreed to process Plaintiff's breach allegation after the deadline to initiate the process had passed; encouraged Plaintiff's former representative to convince Plaintiff to withdraw her EEO case; and expressed an opinion on the merits of a pending claim of discrimination by Plaintiff in Case No. 4E-900-0299-23, which Ms. Satchell had been assisting Plaintiff in Ms. Satchell's EEO counselor role.

(FAC ¶ 92).  Title VII retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 65 (2006).  Instead, a retaliation claim is cognizable when "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have

---

[8] Plaintiff's third causes of action for Title VII retaliation details a range of other allegedly retaliatory actions.  (FAC ¶¶ 86-96).  Defendant does not argue that the other allegedly retaliatory actions cannot constitute actionable retaliation.  (*See* Mot. at 146).

'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (*quoting Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

The Court's inquiry, therefore, is whether Plaintiff plausibly alleges that Satchell's actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* Plaintiff has met her burden at this stage of litigation. A reasonable worker "well might" be dissuaded from pursuing a charge of discrimination if an EEO counselor failed to process the worker's allegations, encouraged the worker's former lawyers to withdraw a case and expressed a (negative) opinion of the merits of an employee's claim. (FAC ¶ 92). Defendant's argument that Plaintiff was not actually deterred from supporting a charge of discrimination is unavailing, given that the test is an objective test. *Burlington N.*, 548 U.S. at 67. The Court, therefore, **DENIES** Defendant's Motion to Dismiss as to Plaintiff's allegations of her interactions with Ms. Satchell.

## III.   CONCLUSION

For the foregoing reasons, the Motion is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Dated: April 22, 2025

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

19